945 F.2d 409
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
NATIONAL SURETY CORPORATION, an Illinois corporation,
Associated Indemnity Corporation, a California
corporation, Fireman's Fund Insurance
Company, a California corporation,
Plaintiffs-Appellants,
v.
STARGEM HOLLAND, B.V., a Holland corporation, Robin S.K.
Loh, Dora Loh, Robby T.K. Loh, T.D.
Martin-Jenkins, Sheng Mong Chih, W.L.
Hixon, E.L. Tyer, Gary L. Jennings,
Defendants-Appellees.
 No. 89-15573.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 17, 1990.
Submission Vacated March 14, 1991.
Resubmitted Sept. 27, 1991.
Decided Oct. 1, 1991.
 
 1
 Before ALARCON and POOLE, Circuit Judges, and WILLIAMS,* District Judge.
 
 
 2
 MEMORANDUM**
 
 I. OVERVIEW
 
 3
 Appellants, issuers of surety bonds, appeal the district court's dismissal of their breach of contract and fiduciary duty suit pursuant to Fed.R.Civ.P. 12(b)(6). The district court determined that appellants' suit brought against appellees, the parent company of a now dissolved defense contracting firm and the individual directors and officers of that dissolved firm, for failure to reimburse appellants for payment on a surety bond was barred by Nevada Revised Statute ("NRS") 78.585 (Michie 1986). We Affirm.
 
 II. FACTS[1]
 
 4
 In 1981, appellants, National Surety Corporation, an Illinois corporation, Associated Indemnity Corporation, and Fireman Fund Insurance Company, both California corporations, (collectively "National Surety"), issued surety bonds in favor of Ednasa International Inc. and its subsidiaries. Ednasa, although incorporated in Nevada, did not transact business there; its principal place of business was Texas and its main office was located in Houston, Texas. As part of the surety agreement Ednasa agreed to indemnify National Surety for any payments made on the surety bonds in favor of Ednasa's subsidiaries.
 
 
 5
 In 1983, Pyramid International, Inc., a subsidiary of Ednasa, contracted with the United States Army to construct a light tank refurbishing facility in Texas. In accordance with the surety agreement, National Surety provided the necessary surety bonds. Pyramid failed to perform on its contract, and as a result National Surety suffered losses in excess of $13 million.
 
 
 6
 On December 31, 1984, Ednasa through its directors and officers filed a certificate of dissolution in Nevada. The dissolution was authorized by Ednasa's sole stockholder, appellee Stargem Holland B.V. ("Stargem"), a Holland corporation, and the certificate of dissolution was executed in Texas by appellees President Gary Jennings, Secretary and Assistant Treasurer E.L. Tyer, and Treasurer W.L. Hixon, and consented to by appellees Chairman of the Board Robin S.K. Loh, Vice President Dora Loh, Vice President and Assistant Secretary Robby T.K. Loh ("individual appellees"). Attached to the certificate of dissolution was an agreement between Ednasa and Stargem whereby Stargem agreed to assume all liabilities and obligations of Ednasa. The agreement was originally executed on October 31, 1983 and expired by its terms on October 31, 1984. Neither party, however, argues that this contract is not enforceable.
 
 III. PROCEDURAL HISTORY
 
 7
 On December 31, 1987, three years after Ednasa was dissolved, National Surety filed a complaint against appellees in federal district court on the basis of diversity jurisdiction. Count I alleges that Stargem breached its contract when it refused to reimburse National Surety for the payments it made on the surety bonds. Count II alleges that the individual appellees violated NRS 78.590 and breached their common law fiduciary duties when they failed to provide adequately for the payment of Ednasa's liabilities to National Surety.[2] In response, all appellees filed motions under Fed.R.Civ.P. 12(b)(2) and (3) arguing lack of personal jurisdiction and improper venue or alternatively for change of venue. Two appellees, Hixon and Tyer, as part of their 12(b)(2) motion also argued that the district court should dismiss the suit as barred by NRS 78.585's two year "statute of limitations."[3] In response, National Surety filed a brief arguing that personal jurisdiction and venue were proper and, in a footnote, stated that its suit was not barred by NRS 78.585.
 
 
 8
 The district court determined that it had personal jurisdiction over the parties and that venue was proper. Nevertheless, the district court dismissed National Surety's suit as barred by NRS 78.585. The district court converted Hixon's and Tyer's Rule 12(b)(2) motion to a Rule 12(b)(6) motion, without prior notification to National Surety, and held that National Surety's claim was barred by NRS 78.585's two year "statute of limitations" and dismissed National Surety's claim on the merits. The district court granted Hixon's and Tyer's motion to dismiss for failure to state a claim motion as to all the appellees. The district court thus dismissed appellants' claims with prejudice.
 
 
 9
 National Surety filed a motion for reconsideration arguing in its brief, supplemental brief and reply brief that NRS 78.585 did not bar its claim and that the district court improvidently dismissed its suit without allowing it sufficient opportunity to argue that NRS 78.585 is inapplicable to their causes of action. The district court denied National Surety's motion for reconsideration, and this appeal timely follows.
 
 
 10
 On appeal, appellants argue that the district court should not have held that NRS 78.585 barred their claims.[4] In turn, appellees reassert their argument that the district court lacked personal jurisdiction and that venue was improper. Because appellees failed to file a cross-appeal these issues are not properly before us and we do not consider them.
 
 IV. STANDARD OF REVIEW
 
 11
 A dismissal for failure to state a claim is reviewed de novo. Kruso v. International Telephone & Telegraph Corp., 872 F.2d 1416, 1421 (9th Cir.1989). The district court's interpretation of state law is also reviewed de novo. Texaco Refining and Marketing, Inc. v. Aetna Casualty and Surety Co., 895 F.2d 637 (9th Cir.1990). Nevertheless, this court is bound by the state supreme court's interpretation of state law. In the absence of such an interpretation, this court may look to the decisions of the intermediate state courts, decisions in other jurisdictions, statutes, treatises, and restatements for guidance. Dimidowich v. Bell & Howell, 803 F.2d 1473, 14822 (9th Cir.1986).
 
 V. DISCUSSION
 
 12
 A. NATIONAL SURETY'S CLAIM FOR BREACH OF CONTRACT
 
 
 13
 National Surety contends that the abatement provision in NRS 78.585 is inapplicable to its claim against Stargem because that claim is based upon a contract, and not brought against Stargem as a shareholder of Ednasa. NRS 78.585 provides:
 
 
 14
 The dissolution of a corporation does not impair any remedy or cause of action available to or against it or its directors, officers or shareholders arising before its dissolution and commenced within 2 years after the date of the dissolution. It continues as a body corporate for the purposes of prosecuting and defending suits, actions, proceedings and claims of any kind or character by or against it and of enabling it gradually to settle and close its business, to collect and discharge its obligations, to dispose of and convey its property, and to distribute its assets, but not for the purpose of continuing the business for which it was established.
 
 
 15
 NRS 78.585 applies to suits brought against directors, officers and stockholders of a dissolved corporation. National Surety argues that it is not suing Stargem as a stockholder of Ednasa, or on account of any duties resulting directly or incidentally from Stargem's position as Ednasa's stockholder. National Surety contends that any obligations Stargem owes it are independent of the dissolution of Ednasa, and therefore NRS 78.585 does not apply. See Hunter v. Old Ben Coal Co., 844 F.2d 428 (7th Cir.1988) (interpreting Illinois' survival statute and holding that former stockholders of dissolved corporation and third-party beneficiaries of contract to which dissolved corporation was obligee may sue on that contract outside of abatement period); Carmichael v. Halstead Nursing Center, Ltd., 237 Kan. 495, 701 P.2d 934 (1985) (interpreting Kansas' survival statute and holding that its abatement provision is inapplicable when former stockholders sue in their individual capacity to enforce a contract assigned to them by the dissolved corporation).
 
 
 16
 Stargem entered into a contract with Ednasa on October 31, 1983, assuming all of Ednasa's liabilities and obligations. Stargem is now being sued as the obligor of a contract who has allegedly breached its contractual obligations to a third-party beneficiary. See Gibes v. Giles, 96 Nev. 243, 607 P.2d 118, 120 (1980) (per curiam) ("Where a contract contains a promise for the benefit of a stranger to the contract, the third-party beneficiary has a direct right of action against the promisor."). However, by its own terms the contract expired on October 31, 1984. Ednasa dissolved on December 31, 1984. National Surety concedes that its cause of action for breach of contract did not arise until after the dissolution. However, Stargem's obligation under the contract expired two months prior to the event which triggered Stargem's liability under the contract. Thus, National Surety would seem to have had no contract cause of action against Stargem after the Stargem-Ednasa contract expired by its own terms. Thus, if it did, that claim was required by NRS 78.585 to be brought within two years of the dissolution. National Surety did not act while the Stargem-Ednasa contract was in existence, nor did it act at all until 3 years after Ednasa's dissolution for breach of contract.
 
 
 17
 B. NATIONAL SURETY'S CLAIMS FOR VIOLATION OF NRS 78.590
 
 
 18
 National Surety contends that the district court erred in finding that NRS 78.585 barred their suit against the appellees for breach of duty under NRS 78.590, which provides:
 
 
 19
 1. Upon the dissolution of any corporation under the provisions of NRS 78.580, or upon the expiration of the period of its corporate existence, limited by its certificate or articles of incorporation, the directors shall be trustees thereof, with full power to settle the affairs, collect the outstanding debts, sell and convey the property, real and personal, and divide the moneys and other property among the stockholders, after paying or adequately providing for the payment of its liabilities and obligations.
 
 
 20
 A plain reading of the statute indicates that only the directors of a dissolved Nevada corporation have a duty as trustees to pay, or make provisions to pay the creditors of the corporation.[5] Stargem as shareholder, and Hixon, Tyler, and Jennings as officers, were not directors. Thus, the only parties who might have liabilities under NRS 78.590 are Robin, Dora, and Robby Loh as directors.
 
 
 21
 National Surety argues that NRS 78.585 is a survival statute, not a statute of limitations, and that its two year abatement provision does not impose time bars on lawsuits, but merely saves certain causes of action for two years which dissolution would otherwise impair. Whether the two year abatement provision is technically not a statute of limitations is irrelevant.[6] Read in conjunction, the phrases "does not impair any remedy or cause of action" and "commenced within 2 years" indicate that two years after the dissolution of a corporation, a cause of action against the corporation or its directors, officers, or shareholders is no longer viable. Thus, NRS 78.585 blocks all remedies and causes of action against directors, officers, or shareholders not commenced within two years. National Surety did not sue the directors until three years after the dissolution of Ednasa. Therefore, the cause of action against Ednasa's directors is barred by NRS 78.585.
 
 C. APPELLEES' CHALLENGE TO JURISDICTION
 
 22
 On appeal, appellees reassert their arguments that the district court lacked personal jurisdiction and that venue was improper. They raised these challenges before the district court, and the district court rejected them. Because appellees failed to file a cross-appeal, we do not consider these arguments.
 
 
 23
 Generally, an appellee is allowed to present any argument in support of a district court judgment without filing a cross-appeal. See, e.g., Carter v. CMTA-Molders & Allied Health & Welfare, 736 F.2d 1310, 1313 (9th Cir.1984). However, when an appellee seeks to alter the judgment to enlarge the relief granted, we have held that a cross-appeal is necessary. Animal Protection Institute of America v. Hodel, 860 F.2d 920, 928 (9th Cir.1988); United States v. One 1964 MG, Serial No. 64GHN3L34408 Washington License No. DFY 260, 584 F.2d 889, 890 (9th Cir.1978). As more fully explained by the Supreme Court,
 
 
 24
 "[T]he appellee may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below. But it is likewise settled that the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it."
 
 
 25
 Massachusetts Mutual Life Ins. Co. v. Ludwig, 426 U.S. 479, 480-81 (1976) (quoting United States v. American Ry. Express Co., 265 U.S. 425, 435 (1924)).
 
 
 26
 Appellees ask this court not only to affirm the district court's ruling that National Surety's claims are barred by NRS 78.585, but also to reverse its decision that it had personal jurisdiction and that venue was proper. This is not merely " 'an attack upon the reasoning of the lower court,' " id. at 481, as concerns its analysis of NRS 78.585, but is an attack on the judgment. This we refuse to do absent a cross-appeal. AFFIRMED.
 
 
 
 *
 Honorable Spencer Williams, United States Senior District Judge, Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Because the district court dismissed appellants' causes of action for failure to state a claim, the following facts are accepted as true. Love v. United States, 871 F.2d 1488, 1491 (9th Cir.1989)
 
 
 [2]
 The complaint contains three causes of action. The third cause of action claims that the funds received by Stargem from Ednasa belong to National Surety and that Stargem holds these funds in constructive trust for National Surety. On appeal, National Surety makes no mention of this third cause of action. We therefore do not address it
 
 
 [3]
 The motion filed by Stargem, the Lohs, and two persons not party to this appeal also sought dismissal under Fed.R.Civ.P. 12(b)(4) and (5). These motions were denied and have not been appealed
 
 
 [4]
 National Surety also argues that the district court erred when it converted appellees' Rule 12(b)(2) motion into a Rule 12(b)(6) motion and dismissed its claims sua sponte without prior notification to National Surety. Although a court may in its discretion dismiss a claim, it must give the plaintiff prior notification of its proposed action and allow plaintiff an opportunity to respond. Sparling v. Hoffman Construction Co., 864 F.2d 635, 638 (9th Cir.1988). The district court did not do this. However, even assuming the error was made and not cured by the extensive briefing addressing the district court's decision to dismiss, given our disposition of this appeal, we need not consider this argument
 
 
 [5]
 "Where a statute is clear on its face, a court may not go beyond the language of the statute in determining the legislature's intent." McKay v. Board of Supervisors of Carson City, 102 Nev. 644, 730 P.2d 438, 441 (1986)
 
 
 [6]
 A distinction has been drawn between statute of limitations and survival statutes by other courts. See Missouri ex. rel. Eagle Oil Co. v. Tillman, 712 S.W.2d 20 (Mo.App.1986); Van Pelt v. Greathouse, 219 Neg. 478, 364 N.W.2d 14 (1985); Poliquin v. Sapp, 72 Ill.App.3d 477, 390 N.E.2d 974 (1979); see also 16A W. Fletcher, Cyclopedia of the Private Law of Corporations, § 8144, at 459 (rev. ed. 1988). Nevada has never made this distinction. Even when the predecessor of NRS 78.585 contained an express abatement provision, Nevada courts did not adopt the interpretation proffered by National Surety. See Seavy v. I.X.L. Laundry Co., 60 Nev. 324, 108 P.2d 853 (Nev.1941)